Good morning, Your Honors. My name is Carl Herman. Good morning. Good morning, Your Honor. I appear today on behalf of Jacorey Taylor. And the issue that I'd like to discuss with the Court today has to do with the dismissal of juror number three during the jury deliberations. I attempted to research this issue to try to determine how often something like this actually occurs, and there don't appear to be very many reported decisions as to what to do when you have a juror the third day into deliberations is either dissenting and being pressured, as she said, or is in a position where she truly can't continue with the deliberations because Yes. We do have a couple examples. We have the Symington case in this Court. Yes. And so I'm interested in your characterization of what the juror was doing. As I understand our case law, it's if the juror was dissenting and is being excused because the majority of the panel is disagreeing with her, then we've got a problem. But if the juror has other problems, is unable to deliberate, then we don't have a problem. We don't have a reversible situation. I've read the juror's statements to the Court, and I've read the statements of the foreperson to the Court. I don't see anything in that that tells me one way or another how the juror was likely to vote in this case. For all I can tell from her statement, she would have voted for conviction. So what is there to show me that she was being excluded because she was dissenting, because of her views on the merits of the case, as opposed to her just inability to grasp the concepts that she was supposed to judge about? Judge Horwitz, I think that's the central question in this case. We know a couple of things. One is the juror, the foreperson, during the colloquy with the judge said, I can understand a dissenting opinion. And I took that, and I think the judge took that, and I think this Court can take that to characterize. Well, I took it, so maybe I'm — maybe I took it wrong. I took it the foreperson to say, look, I could understand if she just disagreed with us, if she had a dissenting opinion. But she can't even engage on the issues. And so I'd be fine if — because the judge says something like, you know, we can't exclude somebody just because they disagree. And she's — and the foreperson says, I can understand a dissenting opinion, but that's not what we have here. We have somebody who just can't engage at all. So is that the — what other evidence do we have that she was dissenting? Well, what we have is kind of the circumstances which we allude to in our brief, that it's a Thursday afternoon at 3 o'clock, the judge engages in colloquy with juror number 3 and juror number 5, the foreperson, announces to the jury that juror number 3 will not be continuing and that they're going to bring in an alternate juror starting on Monday. The jury is in recess Friday, Saturday, Sunday, comes back about 9 o'clock or 9, 15 on Monday. The judge re-instructs the jury that they've got to restart their deliberations all over again. An alternate juror is put in. And shortly after lunch, we have a — we have a unanimous verdict. What does that prove? It's — It proves — I mean, it could prove that she's totally befuddled, just like she said. Well, Your Honor, I think — I think it suggests that she was holding out. And again, because of the restrictions on asking jurors what their — what their opinions are or where the deliberations stand, which are well grounded in the law, that judges are not permitted and tell the juror, don't tell me where you stand on these deliberations. Yes, Judge Gould. My problem with your position on this is that if we review, which I think is the case, for abuse of discretion, when a district court dismisses a juror at this stage, which is certainly very unusual, but it does happen sometimes, if we review for abuse of discretion, then how can we say there is such an abuse if we don't have some affirmative evidence that she was a holdout? That is, can we take the kind of inferences you're arguing from the quick verdict Monday and — or the ambiguous sentence of the foreperson and say that's sufficient to conclude the judge abused his or her discretion? Judge Gould, I respond by pointing out that there's some other aspects, some additional information in the record. The marshal approaches the judge and says to the judge, the jury is getting very loud. The marshal says they appear to be on the verge of an altercation. The judge says to the marshal — and the marshal says, shall I ask them to cease their deliberations? And the judge says, use your judgment. And the marshal does ask them to cease their deliberations. There's also evidence that juror number three tried to pass a note to the judge and that the other jurors were objecting to her passing that note without them looking at the note. But she did it anyway, and that's how the judge obtained the note. And actually, there were two notes. And I think it's — I think this Court would agree that it's — jury deliberations often can be heated and disputes can take place in a jury room, but this was so unusual that the marshal made reference to the judge about this, that it's getting very loud. I think there's going to be an altercation or a fight, which I think is further indicia that this juror was isolated, that she was maybe even being pushed out by the other jurors. Now, I agree that we're kind of reading between the lines here. And — And what did the judge have done, in your opinion? You know, I've been thinking about that for years, because I was the trial lawyer in this case. And we were all thinking on our feet, because I think we were all kind of dumbfounded as to what should take place, particularly because the trial had gone on for a month. There was never any indication, and I agree there hadn't been deliberations. But the foreperson makes reference on two occasions to some type of medication. She's on some type of medication. I'm not even sure exactly what that means. It would seem to me that the judge — and given the fact that, based on the jury voir dire, we had never been given the impression from this juror that she was on any type of medication which would affect her ability to be a fair and impartial juror in the case. Certainly, the trial judge could have brought her back and said, tell us about, you know, any issues you're having. Tell us about whether you're on medication or not. And the foreperson says to the judge, can I speak to you in private, which sounded like she was about to kind of say something that maybe she didn't want a lot of people to know about. And the judge says, well, essentially, we're in private, which was not the case. It wasn't an in-camera, in-chambers type of situation. It was in a public courtroom. So everyone seemed to be kind of dancing around the issue. And then the judge essentially asked the juror, do you want to continue? And she said, no, I don't want to continue. And I'm not sure whether that was appropriate. I mean, many jurors, if they're being isolated, if it's 11 to 1 and there's heated discussions and potential altercation in the jury room, if I'm a juror, I'd say, sure, I don't want to put up with this any longer. I'm being pressured. And I think — The trial judge says, I think I have — here's my options. I can call back the jury and reread the instructions. It took three hours. Or I can excuse her. Are those the two options? Well, Your Honor, I think that there probably would have been halfway measures that could have been adopted. And I know the judge was thinking about, well, I'll give her the instructions to read over the weekend. And none of us thought that was a particularly good idea. And, of course, she said that wouldn't make any difference anyway. But — So what should the judge have done other than excuse the juror? It seems to me the options are either go back and deliberate some more or some measure aimed at this particular juror, questioning her more, doing something. But the questioning of this juror — Or declare a mistrial. Declare a mistrial? Well — I can't really declare a mistrial because one of the jurors says — I'm just trying to think what — Yes. And this is prompted by Judge Gould's question about the judge's discretion. It's a close call. It's a difficult call of what to do. He looks her in the eye. He determines that she's just not able to continue. She says she can't continue. He's got to think in the back of my mind, if I force her to go back, if they find him guilty, a guy like you is going to come up and say, you know, you forced her to deliberate. You forced a verdict. Given that, you know, there aren't that many great options, not that much precedent, I'm having a hard time finding how he abused his discretion if we can't even noodle together really what he should have done under the circumstances. Well, I think it was a difficult situation. And I think certainly he should have pursued with this juror the medication issue, because that seemed to be the nub of what the jury floor person was saying. She seemed very adamant. I've read both notes. And by the way, I tend to agree with you. You said it in the courtroom earlier. Common sense tells us that she was probably not yet willing to vote for a conviction because you look at the set of facts here and that's what occurs. But the record doesn't disclose that. And so I'm trying to figure out what the judge should have done. And asking her more questions, the failure to ask her more questions before dismissing doesn't sound like an abuse of discretion to me, given her two notes that say, please let me out of here, and then her testimony in the courtroom, which is that I just can't be fair to either side because I don't understand RICO, an issue on which she has some company. So what should he have done? Well, I — There's only two options, it seems to me, keep her or send her home. Whether or not you declare mistrial if you send her home is a separate issue. I mean, the judge could have said this jury can't come to a verdict under the There are risks with that, too, if that's not manifestly necessary. Absolutely. Sure. In terms of double jeopardy, there may well be. Right. So the judge correctly said, I probably shouldn't do that. And now I only have two options. It's keep her or send her home. Why was it an abuse of discretion to pick the send her home option?  Right. As Judge Silverman suggested, I think a good judge at that point says, I have options that don't result in jeopardy, and so I'm going to try them. Well, Your Honor, I think the word pressure is the problem here. When she says, I'm being pressured. And certainly a judge could have brought all the jurors out and said, I know things are getting somewhat heated in the jury room, but I want you all to reexamine your views. This can't be a pressure situation. Everyone is entitled to vote the way they believe the evidence supports. As compared to making a decision, does that tell a split decision? In other words, I read this juror saying, I don't want to make a decision on this issue because I don't understand the concepts. I just don't want to make a decision at all. And my fellow jurors are telling me, you have to make a decision. Not which decision, but a decision. Well, I guess the problem is, Your Honor, that is she saying that because she's truly a holdout, and obviously we don't know all the recesses of her mind and psychologically what she's all about, but is she saying, I don't understand RICO and I can't continue because she's maintaining a principled position that she just doesn't think the evidence was sufficient. And she had sent out a previous note about the evidence. So it wasn't that she didn't want to deliberate. It's not a juror who refuses to deliberate. It's not a juror, as in some of the other cases, who was found to be mentally unstable. Or a juror, another juror in another case, was found to be paranoid and suicidal. It didn't rise to that level. So we're kind of some intermediate level where she says, I don't understand RICO. And she says, I'm being pressured, and she says, I just don't want to continue. And the question is, is that sufficient for us to look at kind of a potential of a Symington situation, any reasonable possibility that the impetus for a juror's dismissal stems from the juror's views? I'm not saying that Judge Jones kicked her off the jury because he wanted to get a unanimous verdict, but it seemed to have been somewhat precipitous. So assume for a second, and use the Symington case as one of the examples, assume for a second that it's okay under some circumstances to dismiss a juror because the juror can't deliberate. And I think our case law says that. Absolutely. How is your case distinguishable from that situation? In other words, I'm wondering whether if we accept your argument, then we'd be saying every time a judge dismisses a juror, we must reverse. I don't think I'm maintaining that position. You're not making that argument, but I'm trying to figure out whether the principle you're urging leads us to that conclusion. Well, I think she was trying. And I think that the trial judge gave her the example, if the evidence, if you understood the charges and the evidence were sufficient, could you convict? Yes, I could. And alternatively, the judge asked her that same question. If there was insufficient evidence, could you acquit? And she says, yes, I could. In both circumstances. They come out of his nose, but they're yeses. Exactly. Right. Right. So she says, I could go for either side if I understood the law, but I don't understand the law. Why? Let's assume that's the record. Would that be enough to excuse her? Well, you know, the law is complicated. Everyone acknowledges that RICO is complicated. The judge obviously breaks it down in the charge as to you have to find this, this, and this, and if you find that, you have a RICO conviction. If not, you don't have a RICO conviction. I just – the problem is, is she saying this because she's been isolated by the other jurors that there's heated words going on in the jury room, and is she simply saying, I give up. I guess I just don't understand this stuff. Okay. But who makes that assessment? I mean, the guy on the scene is in the best position to make that call, isn't he? How can we do that? Well, certainly. I mean, the judge is faced with a situation. It's an evolving situation. The judge has to make that determination based on – and I noted that she was red-faced. She seemed to be upset. And I don't think there's any dispute about that. And the jury foreperson seemed to be rather upset about the development, that, you know, the impression was that she has some type of mental problem and she can't deliberate. And I don't think that was – I don't think that was borne out by the record. I don't think there was sufficient evidence here to get the judge to pull the trigger on her and take her off the jury. Can I ask you to switch gears for just one second? Certainly. With respect to the incorrect Pinkerton instructions, I only have one question. Do they only affect the two specific charges to which they relate? I believe so, Judge. Okay. Yeah. Yeah. You have about three minutes. Did you want to save some for rebuttal? Certainly, Judge. Thank you very much. Thank you, Mr. Herman. Good morning. Good morning. May it please the Court, Adam Flake for the United States. Could you pull the mic up a little bit? Certainly, Your Honor. Is that better? Yes. Before I begin, I should point out, I made a mistake in my brief. I don't think it's major, but I do want to correct it in the interest of being candid with the Court. After the Court dismissed Juror No. 3, I accidentally put in my brief on page 61 that the Court re-read the jury instructions to the newly constituted jury. The Court didn't, did not re-read the jury instructions. But the alternate was there when the originals were read. That's correct, Your Honor, and I apologize for that mix-up. Thank you. Got it. As far as dismissing the jury, the district court, nobody disagrees that this is a bad situation. The district court does not want to be in this situation. But he handled the matter appropriately. He told the parties exactly what he intended to do. The only thing the parties objected to was the thought of allowing Juror No. 3 to take the jury instructions home. Other than that, there was no objection raised to the course of questioning proposed by the district court. The district court went through the questions that it had outlined ahead of time, and it determined that this juror was not willing or able to engage in deliberations. Let me ask you this. It seems to me there's a fine line between I don't understand RICO and saying as I sit here now the government hasn't proven RICO to me beyond a reasonable doubt. I'm not sure how we distinguish those two things. If she sits through the trial, hears the instructions, and is not persuaded to convict, isn't that like saying, you know, they haven't proven the case? Well, Your Honor, I think, I mean, I agree that it could potentially be a close question. But here, the district court specifically asked the juror, if you think the government has proved its case, would you have a problem convicting? No problem. If you think the government hasn't proved its case, would you have a problem convicting? No, no problem. I just don't understand what's going on. I don't, I'm not comfortable making this decision. I don't think it's fair to the government, and I don't think it's fair to the defendant. There's nothing in her answer that gives any kind of indication that she is, she is agree that the government has proved its case, and she's getting pressure from her fellow jurors. You know, I agree with you, that's the record. But we've all hung around lots of courtrooms, and a lot of us, including you, have seen juries come in and not come in. And I don't think there's any doubt in anybody's mind that this juror was not yet willing to vote for conviction. Because once she's replaced, the conviction ensues pretty quickly. And so in the real world, and I think this is what your opponent is saying, we can infer that this juror was not willing to agree with the other 11 to convict this defendant. And she kind of says so. I don't know the difference between hanging out with bad people and being a member of a RICO organization, which suggests to me that she thought the evidence probably didn't demonstrate the second level. I know she doesn't say that. But if we put all this together, don't we have a situation where the judge is removing the defendant's only favorable juror from the pool? Well, Your Honor, a couple of things. First of all, I don't think that it's actually appropriate in this case to look at how long the jury was out after the judge dismissed the juror, because this Court is determining whether or not the district court properly exercised its discretion. And the district court didn't know what was going to happen four hours later. So to hold that it abused its discretion because of something that happened afterwards isn't fair to the district court. Fair enough. But I still stick with my point, which is if you offered me odds, I'd offer very long duration at the time that she was dismissed. Your Honor, I think that the evidence shows that this juror wasn't willing to vote. She wasn't willing to engage with the other jurors, and that's why she got kicked off the jury. She wasn't able to, or for whatever reason, she wasn't able to engage in the deliberations and fulfill her obligations as a juror. And there just isn't any — I mean, Mr. Taylor was convicted. That's a fact. But there isn't any evidence to show who was voting which way when she was removed from the jury. Could the judge have responded — and, Mr. — your opponent didn't say this, but it occurred to me looking at this. We have two notes from the juror that say, I'm not sure I understand the difference between being a member of an organization and a RICO violation, and the other one has to do with knowingly using or carrying a firearm. Could the judge have given specific instructions, supplemental instructions on those two issues? The judge have said, look, I understand RICO is a difficult concept, so let me break it down for you. And with respect to carrying a firearm, let me break that down for you. Now do you — you know, now go back and try some more. Would that — should the judge have tried less drastic means first? I know nobody suggested it at the time. Your Honor, I think the judge would have been in his discretion to do that, but the judge would have been in his discretion and made a determination about whether or not that would have been a fruitful course of action based on what he was observing. And I think — I mean, I'm not going to say that that would have been inappropriate by any means, but I think that what the judge did here was an appropriate action to take. If I could just say one other thing, and that is, I think that once the judge called the juror in and specifically told her, whatever you do, don't tell me which way you're going to — I'm not quoting, but whatever you do, don't tell me which way you're determining this case, then, of course, she didn't do it. But I think it's worth noting that she didn't say in her notes, help, I want to acquit, and the other 11 jurors are pressuring me to vote for — now, that would be great evidence. That would be a very different case than what we're looking at. But her notes say, I don't understand this and I'm not comfortable making a decision. And there just isn't any evidence to — that we can point to that, A, she wanted to acquit at all, and, B, that her desire to acquit was the impetus for her being  No, but if she can't make — if she can't make a decision, then there's a mistrial. Correct? If at the end of the day, the 11 people vote to convict and one person passes, there's a mistrial. Right. But she's saying, I don't want to do this. I'm not — Why shouldn't the judge have brought the whole jury into the courtroom and say, I'm concerned whether you're going to be able to reach a verdict? Do you — does anybody have the feeling that you will be able to deliberate  re-read? I mean, why wouldn't that have been the better course? I'm not — I'm not sure what the difference would have been. I think the — I mean, I'm guessing here because I don't think the judge specifically said this, but I think the judge was thinking, we know which juror is the problem. Let's get her away from the other jurors and get her to — I mean, you know, one person's problem is another person's no vote. You know, I mean, you know, as a general rule, if the jury can't reach a unanimous verdict, it's a — it's a hung jury, it's a mistrial. And I'm not sure why the — why the judge didn't assess this that way. Your Honor, I think just because the — the way that it played out where one juror is trying to pass notes from the jury room and doesn't want to let the other jurors see it and they're shouting at each other — Well, so what? They're passing notes. This is not the third grade. They can — they can pass notes. I mean, what does that have to do with anything? If they can't — my point is, if this jury can't reach a verdict for whatever reason, generally that grounds for a mistrial, not kicking off the one juror who's holding up the works. That's correct, Your Honor. But if the reason is that a juror is not willing to engage in the obligations placed on her to be a juror, then it's not a mistrial and the appropriate course is to — is to do what the judge did. And I think that the judge properly exercised his discretion in taking the steps that he took to — you know, obviously he's limited in the inquiry that he can make, but I think based on the limited asking around that he was allowed to do, he acted appropriately. I don't want to — I want to make sure you have — you've exhausted your arguments on this point before we turn to another one, so let's — Certainly, Your Honor. So I want to — I want to ask you about the testimony of the agent about what a witness said to the agent beforehand. So as I understand it, you put a witness on the stand, you tell the other side you're not going to put in any evidence about other bank robberies because only one of them is the predicate act, and that's in your pretrial — in the pretrial order. And then you get a witness on the stand and you ask the witness whether or not, with respect to the predicate act, the — Mr. Taylor was there and the witness develops amnesia on the stand. Am I describing the facts correctly so far? I — sarcastically. Okay. Okay. And then — so then the witness gets off the stand and you put on a government agent and you say to the government agent, did — did the witness once tell you that Mr. Taylor was the person whose nickname was given? And did the witness also tell you that Mr. Taylor engaged in a robbery of another bank? And then — and the defense says, we're not offering those for the truth of the matter, we're offering those to impeach the witness's testimony. Yes. If the witness says, I don't remember, but you introduce specific evidence that the witness once said that another crime occurred, how can that not be for the truth of the matter? In other words, you're impeaching the witness's testimony that he doesn't remember by saying that he once told you something which you can't introduce for the truth of the matter. Isn't that troublesome? Your Honor, the — It may not make any difference in this case because, as I understand it, Mr. Taylor doesn't deny that he was involved in the — in the — in the relevant robbery, he just denies that it was RICO-related activity. What did the witness say that you were trying to impeach him about? He said that the — First of all, which witness are we talking about? We are talking about — if I can consult my notes. I'll find a name, too, while you — I apologize, Your Honor. Is it — Cooper. Cooper. So Cooper gets on — Cooper gets on the stand and basically says, yeah, I was involved in this robbery, and was somebody with you named Corey? Yeah. Is Corey the person in the courtroom? No. It wasn't. It wasn't this guy. And so the witness gets off the stand, and then you put on an agent who says, well, that's not what they once told me. Now, why — Didn't he say — didn't Cooper say he didn't know who had robbed the Klondike Casino? Yeah. He — Cooper said a number of things that were extremely difficult to believe, that he didn't know who was there with him, with a gun and a mask, and robbing the casino with him. And then later he said that somebody named Corey had done it with him. And when we asked, well, is Corey Jack Corey Taylor? And he said, no, it's another guy I knew in California. And so this was — Right. So aren't the impeachment statements from the agent really introduced for the truth of the matter? No, Your Honor. In other words, if you're impeaching this witness, aren't you asking the jury to draw the conclusion that this witness really does believe Corey was involved — was the person in the robbery and said so? I mean, what are you impeaching them about, that they don't remember? You're really impeaching them about what the real facts are, aren't you? Well, I mean, I think we're impeaching the witness, just showing that the witness generally is being untruthful about his testimony on that particular point. That's one thing to say to the witness, didn't you once give contrary testimony to an FBI agent or to an agent, and you have the agent come on and say, yes, the witness once did describe the robbery in different ways. But when you say that the witness once told me that this defendant was the person who committed the robbery, I can understand how that's not coming in for the truth of the matter, no matter what the jury is told. As I said, it may not make any difference in this case. Didn't he say — didn't this guy say the guy he knew was Cooper, he didn't know him to be the defendant Taylor? Is that — do I remember that right? So what Cooper said was — Cooper admitted that during an interview with law enforcement on May 28th, he said the other person was named Corey. But when asked at trial if Corey was defendant Jackery Taylor, Cooper responded, no, no, Corey is a guy I knew in California. Okay. So that's the statement they're trying to show is untrue. Yes, Your Honor. And to show that's untrue, they introduce or they ask him if what he — Do you recall telling the agent that Corey had bragged to you about how easy — how easy the Gold Rush robbery was and how he wanted to rob more small casinos in Henderson? That was — we impeached him with that statement because he did say that to the agent. You're contradicting what he had just — what you had just introduced. Yes. Okay. But if you're — oh, you're contradicting that he doesn't remember by introducing the prior statement. Well, not that he didn't remember. He said he didn't know who the guy — it was a different person. Yeah. And you're showing it wasn't a different person. It was this guy. Yes. But that's not coming in for the truth of the matter that it's this guy. It's just coming in to show that his statement that he didn't remember was — It was predicted by him saying he did the robbery with him. Your Honor, one, I agree that it's harmless. Two, I think that the Court should hold, as it has many, many, many times, that juries are capable of following instructions, and when the Court tells them to consider evidence for X and not for Y, there's no reason to assume that the Court should — Okay. I do think juries are capable of following instructions, but they got the wrong ones on the Pinkerton counts. Why shouldn't we — and why shouldn't we — it makes no difference in the overall scheme of this case. Why shouldn't we just reverse those two convictions? Well, Your Honor, he admitted to one of them. Right. One, but not the other. And so if the Court finds that the Pinkerton instruction was defective, I don't think it does that. Well, it was, right? There's no dispute about it. Pinkerton is a conspiracy instruction, and the counts that they were given for were not conspiracy charges. That's correct, Your Honor. And your brief, candidly, says, no, this was a mistake. Okay. One he — okay, one he admitted. What about the other one? I — the other one — the other one was the one where you had the agent — where you had the cooperating informant wearing the wire. The wire. The wire testimony is not conclusive, but the person takes the stand and says, when I said — when he said, here's the stuff, and I said, here's your money, we — that was cocaine because I was there and I took it from him. And they try to impeach — they then try to impeach the testimony of that person. Assuming that's the evidence, and I think that's a fair description of it, is that sufficiently overwhelming to overcome the bad — bad instruction? Yes, Your Honor. But as Judge Hurwitz points out, does it make any difference one way or the other? I mean, if we toss it out, count, what is it, 17 or 18, whatever it is. It won't save him any time in jail, Your Honor, but I do agree with Judge Hurwitz's position. I'm sorry? It won't save him any — he'll still have a life sentence, so, I mean, it doesn't — it won't get him out of jail, but I agree with Judge Hurwitz's position that it's sufficiently overwhelming. Well, no, I — that was a question. Contention. That was a question. Excuse me. That was a question, not a position. I adopt your — your position. No, you adopt your own answer, I think. Anything else? No, Your Honor. Thank you. Thank you very much, Mr. Flake. Mr. Herman, back to you. Thank you, Judge. On the juror dismissal issue, it's — it's almost akin to — she was kind of a — from like the Survivor TV show, she was kind of voted off the island. I think the jury foreperson was basically giving the judge some reason to get rid of her, that she's on some medication. I said that twice. I don't know what that means. I suppose it's not some medication for a heart problem or a kidney problem. It's some type of mental medication that she's on because she can't concentrate. That's what the foreperson said. And we need to get her off because we've got to get going with, you know, what we want to do, what the 11 of us want to do, which is convict, and she seems to be an obstacle. And I think it was — it was an error for the judge and an abuse of discretion to permit kind of the foreperson to — to kind of run things. And I think when you put all the pieces together, certainly in terms of the potential altercation in the jury room, the jurors were annoyed at her that she was passing a note without their authority. It sounded like she was a problem. And I think the — Doesn't the foreperson — it's not like the foreperson contacts the judge in this case. It's like the juror contacts the judge, and the judge brings the — then brings the foreperson in the room and asks questions. I think this might be a different case if the foreperson had sent out a note saying we have a problem with juror number three. Can you solve it for us? I agree with Your Honor. That would be different. That's not what we have here. But the sense you get — and I don't know where this whole notion of medication comes from, because it's never explored. And it could be rather critical. If she's taking some type of anti-anxiety medication or anti-psychotic medication, which is kind of what the foreperson is suggesting, and we don't even know where that's coming from. She's just — and she's not a doctor. She's saying on the foreperson, she seems to have some problem with — or seems to be on some medication. And that becomes kind of a truth in the case. That becomes a fact in the case. It feels like the jurors were looking to push her out so that there wouldn't be the dreaded mistrial, that we wouldn't have 11 jurors voting for conviction and one juror saying, I can't go along with it. So I — it sounded to me like the judge was giving too much authority to the foreperson to kind of allow the jury to do what they seemed to be intent on doing, was to isolate her to the point where she said, I don't want to continue, I can't continue. Roberts. Anything else? Judge Gould? Judge Hurwitz? No. Except that it's nice to see somebody from New Jersey here. Thank you. Thank you, Mr. Herman. Going back to that. Thank you, Your Honor. Thank you as well. The case just argued is submitted and we'll stand and recess for the morning. Judge Gould, we'll see you in the conference room. Thanks.
judges: Silverman, Gould, Hurwitz